IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Innotech Sales & Engineering, LLC, | Case No. 3:10 CV 858 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Paul Hostetler, | |
| Defendant. | |

### INTRODUCTION

This case involves the fallout from a business relationship gone bad. In 2007, Innotech Sales & Engineering ("Innotech") and Triple Diamond Plastics ("TDP") partnered to sell collapsible storage bins to the automotive industry, but when things went south, the predictable occurred: a lawsuit was filed. Innotech chose to sue Paul Hostetler, who was a major shareholder and CEO of TDP, instead of TDP. The Complaint alleges Hostetler fraudulently induced Innotech to enter into an agreement, or alternatively, promissory estoppel compels enforcement of the promises allegedly made by Hostetler.

A two-day bench trial was held on April 5–6, 2011. This Opinion will serve as the Court's findings and conclusions pursuant to Federal Civil Rule 52(a).

### FACTS

Although much of the testimony at trial centered on the reasons neither side was happy with the other's performance under the Agreement, it is largely irrelevant. The most important testimony, for purposes of resolving this case, focused on an August 2007 meeting hosted by Tom Davis, a

principal of Innotech, at the Great Oaks Country Club. Brian Coll, then-President of TDP, conducted the meeting to discuss the two companies working together to develop and sell a collapsible storage bin which, by all accounts, had a potential market in the automotive industry. Innotech had connections in the automotive industry and had been working with TDP's predecessor, Jenmar, to market and produce similar bins. Coll invited Hostetler to the meeting, although Hostetler did not have a formal role at the meeting and was not involved in day-to-day operations of TDP.

Tom Davis testified that Hostetler, both in a private meeting between the two men and in front of others, assured Davis that TDP would do "whatever it took" to see that the bins were made and the business was successful. On December 10, 2007, Innotech and TDP entered into a sales representation agreement ("Agreement"). Innotech agreed to act as sales representative for TDP for a listed group of customers, primarily in the automotive industry, in exchange for which Innotech would receive a five percent commission. The Agreement had a two-year term with provisions for termination with and without cause. The products subject to the Agreement are not identified, but the testimony at trial centered on collapsible storage bins of two particular sizes -- 48" x 45" and 32" x 30".

Although the crux of this case is the alleged promise made by Hostetler, and Davis's alleged reliance on it, Davis did not know or meet Hostetler until that August meeting; there was no followup with Hostetler; the contract between the two companies was signed the following month in September; and, the contract did not reference any reliance on Hostetler. Paragraph 14 of the Agreement states:

> **Entire Agreement -** This Agreement and any schedule of amendment attached to it, including the Product Confidentiality and Exclusivity Agreement previously executed, shall constitute the entire agreement between the parties. There are no representations and warranties by either party unless included in this Agreement.

Numerous documents stipulated into evidence, including e-mail exchanges, failed to recite or confirm any promise by Hostetler, personally or on behalf of TDP, over the two years the Agreement was in effect. The first notice to either Hostetler or TDP that Hostetler was being blamed for the project failure was the filing of this lawsuit in April 2010.

All the above is set in the context that the partnership experienced problems from the start. For example, Innotech had the impression that TDP would "retool" the molds used to make the bins, and the testimony at trial in part reflected different interpretations of what "retool" meant: Tom Davis interpreted the term to mean Hostetler would purchase brand new molds, while other witnesses testified it meant modifying the existing molds. TDP presented uncontradicted testimony that representatives of Innotech were present at one or more meetings in Canada with Briadco, a fabricator charged with modifying the molds. It was clear from those meetings that TDP was not buying new molds, but rather modifying existing molds.

There was also testimony about the significant difference between the cost of modifying versus purchasing new molds. Innotech claims that it needed a workable prototype before it could obtain purchase orders; TDP offered testimony that purchase orders were needed first before it would invest the major dollars needed for retooling the molds. Innotech never came forward with any purchase orders, and each side blamed the other for the lack of sales. Innotech visited TDP's manufacturing plant at Liberty Center, and gave input on the mold modifications. Nonetheless, the sample bins presented to several customers either failed testing or were rejected.

Also of significance is that Hostetler was having financial difficulties in 2006-07, including a significant claim by the IRS which placed a number of Hostetler's assets in jeopardy. It is clear that Hostetler, who had a significant investment in TDP, was following the TDP investment more closely.

Innotech claims this gave Hostetler strong motivation to induce Innotech into investing with TDP and he should have disclosed his financial difficulties to Innotech prior to the parties entering into the Agreement.

**DISCUSSION**

Plaintiff raises two claims against Hostetler: fraud in the inducement and promissory estoppel.

**Fraud in the Inducement**

To succeed on its fraud in the inducement claim, Innotech must demonstrate five elements: (1) a false representation concerning a fact material to the transaction; (2) knowledge of the falsity of the statement or utter disregard for its truth; (3) intent to induce reliance on the misrepresentation; (4) reliance under circumstances manifesting a right to rely; and (5) injury resulting from the reliance. *Spencer v. Huff*, 1998 WL 391948, at *3 (Ohio Ct. App. 1998) (citing *Lloyd v. Classic Motor Coaches, Inc.*, 388 F. Supp. 785, 791 (N.D. Ohio 1974); *Greenwalt v. Goodyear Tire & Rubber Co.*, 164 Ohio St. 1, 6 (1955); *Hibbett v. Cincinnati*, 446 N.E.2d 832 (Ohio Ct. App. 1982)).

The Court finds there was no false representation concerning a fact material to the transaction; Hostetler did not knowingly make any false statement or recklessly make such a statement; there was no intent to induce reliance on any misrepresentation; and the circumstances manifested no right for Innotech to rely on any such statement.

One of this Court's primary functions at this trial was to assess the credibility of the various witnesses. Testimony by Innotech's representatives (Tom Davis, Dave Davis, and Ben Davis) was underwhelming. The Court found portions of their testimony simply not credible. For example, Tom Davis, a long-time and successful business owner, claimed that he relied on an offhand general comment by Hostetler at the Twin Oaks Country Club, allegedly made when no one else was present

and yet which formed the very basis for him to sign the Agreement with TDP. This is simply not believable. Lawyers for Davis drew up the Agreement, and there was not only no mention of the allegedly central promise by Hostetler, there is no confirmation of that promise in any of the over two hundred exhibits submitted at the trial.

Tom Davis's credibility was also undermined by his testimony regarding his efforts to claim that TDP was a minority-status supplier. It is clear to this Court that Tom Davis misrepresented, or in his words "oversold," this point, as TDP was never qualified as a minority-status supplier nor ever agreed to such a status.

The most refreshing witness was Brian Coll who headed up TDP in 2007. He answered questions directly and honestly. He worked for the predecessor Jenmar and became President in 2007 when the company changed ownership and officers. He made the decision to send the molds to Briadco for retooling in the summer of 2007, and testified convincingly that Innotech was well aware TDP was not buying new molds because Innotech was present at some of those meetings at Briadco. He called the meeting in August 2007 because TDP needed to generate revenue, and *offered* that if sales justified improvements at the Liberty Center plant, TDP would undertake those changes. His goal was to do what it took to improve the company's profitability.

The Agreement that followed was a standard contract prepared by Innotech's lawyers and signed by both companies with some negotiation over the customer list (Exhibit A to the Agreement). Davis made no mention to Coll at any time, in any written communication or at personal meetings at trade shows, of any promise made by Hostetler, either personally or on behalf of TDP, to "retool" the molds.

Certainly the trial testimony supports a conclusion that both parties to this Agreement may have made mistakes or failed to deliver as expected. The numerous communications back and forth between the two companies reflect the deal went sour due to misfirings by both sides. However, there is no credible testimony that the actions of Innotech were taken based on a promise made by Hostetler.

Furthermore, Davis could not have reasonably relied on Hostetler's alleged promise because it had no detail as to how much money would be invested by Hostetler, when it would be invested, or any other specifics. The alleged promise of doing "whatever it takes to sell bins" is the type of general puffing that is regularly used in business matters to instill confidence that the partnership will be successful. This general statement cannot reasonably support Davis's contention that Hostetler promised to purchase a new mold. Indeed, TDP says it terminated the Agreement because Innotech failed to obtain purchase orders.

**Promissory Estoppel**

Innotech fairs no better on its promissory estoppel claim. Under Ohio's promissory estoppel doctrine, a promise that the promisor "should reasonably expect to induce action or forbearance on the part of the promisee or a third person and . . . [that] does induce such action or forbearance is binding" if one can avoid injustice only by enforcing the promise. *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 503 (6th Cir. 2003) (quoting *McCroskey v. Ohio*, 8 Ohio St. 3d 29 (1983) (adopting Restatement (Second) of Contracts § 90 (1973)) (internal quotation marks omitted)). To establish a claim of promissory estoppel, the plaintiff must prove: "[1] a promise, clear and unambiguous in its terms; [2] reliance [on the promise] by the party to whom the promise is made; [3] that the reliance was reasonable and foreseeable; and [4] that the party claiming estoppel was injured by the reliance." *Rigby v. Fallsway Equip. Co., Inc.*, 150 Ohio App. 3d 155, 162 (Ohio Ct. App. 2002); *Connolly v. Malkamaki*, 2002 WL 31813040, at *3 (Ohio Ct. App. 2002).

6

For the same reasons discussed above, this Court finds that there was no clear and unambiguous promise; there was no reliance by Innotech on such a promise; and that any reliance, if made, would not have been reasonable or foreseeable. Based on these findings, the Court need not reach the issue of injury or damages.

## CONCLUSION

For these reasons, the Court finds that Plaintiff has not proven its case by a preponderance of the evidence. Judgment is entered in favor of Defendant. Each party shall bear its own costs.

IT IS SO ORDERED.

       s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

May 11, 2011